J-S47007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JULIAN JOHNSON | : | |
| | : | |
| Appellant | : | No. 88 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003235-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JULIAN JOHNSON | : | |
| | : | |
| Appellant | : | No. 89 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003237-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JULIAN JOHNSON | : | |
| | : | |
| Appellant | : | No. 90 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003239-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

|   |   |   |   |
|---|---|---|---|
|   | : | | |
| v. | : | | |
|   | : | | |
|   | : | | |
| JULIAN JOHNSON | : | | |
|   | : | | |
| Appellant | : | No. 91 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003241-2019

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.: **FILED MARCH 25, 2024**

Appellant, Julian Johnson, appeals from his judgment of sentence of twelve to fifty years' imprisonment in these consolidated cases. At docket CP-51-CR0003235-2019, he was convicted of theft by unlawful taking, receiving stolen property, and unauthorized use of an automobile. At dockets CP-51-CR0003237-2019, CP-51-CR-0003239-2019 and CP-51-CR-0003241-2019, he was convicted of one count of attempted murder and three counts each of conspiracy, aggravated assault, possession of a firearm with an altered manufacturer's number, possessing an instrument of crime, simple assault, and recklessly endangering another person. Appellant contends that the evidence was insufficient to sustain his convictions. Alternatively, he requests a new trial on the ground that the verdicts were against the manifest weight of the evidence. We affirm.

The following evidence was adduced during Appellant's trial. The first case against Appellant arose from his theft of an automobile. On November

_____

[*] Former Justice specially assigned to the Superior Court.

- 2 -

26, 2018, Philadelphia police received a report of a theft of a silver 2006 Acura SUV, with the license plate KLC-8465, owned by Assad Houssein. Houssein last saw his car in front of 261 Linton Street in Philadelphia at approximately 9:00 p.m. on November 26, 2018. The SUV had a distinct dent on the driver's side passenger door.

The second and third cases against Appellant arose from two shootings on November 27, 2018, one day after the car theft. On that date, police officers responded to a shooting at 5166 N. 8th Street and found a man suffering from gunshot wounds. The victim, Kevon Clarke, was transported to Einstein Hospital and treated for a gunshot wound to the head. Inside the house at this location, the officers found another man suffering from a gunshot wound. The victim, Derrick Bolling, was transported to Einstein Hospital and treated for a gunshot wound to the back. The police recovered thirteen .45 caliber fired cartridge casings ("FCCs") in the immediate vicinity of the shootings. Ballistic testing of the FCCs revealed that two different guns had been used. The police also recovered surveillance video from a nearby residence that showed a vehicle near the scene of the first shooting that matched the description of Houssein's stolen vehicle.

The fourth case against Appellant arose from a shooting on December 1, 2018. On that date, the police responded to a report of gunshots at 8th and Duncannon Streets. A man later identified as Ameen Allen approached the officers at that location, said he was shot, and fell to the ground. Officers transported Allen to the hospital, where he was treated for gunshot wounds

to the upper body and legs. Detectives recovered surveillance videos from nearby residences that showed a silver Acura SUV with a distinctive dent near the scene of the shooting. This vehicle matched the description of Houssein's stolen SUV as well as the vehicle spotted near the scene of the shootings on November 27, 2018.

While investigating Allen's shooting, detectives recovered twenty-nine .45 caliber FCCs, one .22 caliber FCC, two projectiles and three glass fragments. The FCCs were fired from three different guns. Thirteen of the FCCs were fired from a gun used in the November 27, 2018 shooting.

On December 3, 2018, at approximately 8:00 pm, Officer Michael Braun and his partner observed a vehicle resembling the Acura SUV seen in the surveillance videos at the scene of the shooting two days earlier. The SUV had a distinct dent on the driver's side passenger door, and its license plate (KLC-8465) matched the plate number on the stolen vehicle.

The officers flashed their patrol lights, and the SUV sped off and ran a red light. The officers pursued the SUV for a short distance. The car stopped, and three individuals got out and fled on foot. While pursuing the suspects, Officer Braun saw one of them discard a black object into a vacant lot. The individuals were not apprehended, but the officers recovered a black ski mask, as well as a Glock 30 Model S handgun with a damaged serial number from the vacant lot where the suspect was seen running. They also recovered a .45 caliber magazine with thirteen live rounds from a nearby sidewalk.

Forensic testing revealed that the recovered gun had been used in both shootings.

The gun and ski mask were sent to the lab for testing. The DNA mixture found on the mask belonged to Appellant and two other individuals. The DNA mixture found on the gun belonged to Appellant and three other individuals. Additionally, the Firearms Identification Unit was able to restore the serial number on the recovered gun. The gun was traced to a man named Robert Lighty, who purchased the gun in 2017 and sold it to Appellant in August 2018.

The police obtained a search warrant for the SUV and recovered several items, including an Apple iPhone. The officers observed in plain view on the phone's home screen a notification of activity on the Instagram app by a person with the username "Qua2ndst." After obtaining a warrant for the device, detectives learned that its phone number was registered to Appellant.

The police recovered fingerprints from the stolen SUV which were sent to the lab for testing. The prints recovered from the exterior driver's side door and the exterior rear passenger side door matched those of a man named Quadir Simmons. The police then obtained a warrant for the Instagram account "Qua2ndst," and learned that it belonged to Simmons. Posted on the Instagram page was a photo of the interior of a car that matched the description of the stolen SUV, with the caption "Turkey LOL." The photo had been posted one day after the SUV was reported stolen and the same day of the first two shootings. The police also obtained Simmons' cellphone number from the account.

Further, the police found Appellant's Instagram account under the username "4st.Juju" from a search of Simmons' account. Posted on Appellant's account was a photo of him and Simmons holding what appeared to be Glock handguns. The photo was posted on November 20, 2018, about one week before the shootings. There was also a message that Appellant sent to another individual saying, "I got my Glock .45. That's the only jawn I got to myself. If I come across another one, I gotchu." Appellant and Simmons also had conversations regarding a stolen "Jeep" on November 26, 2018, the same night that Houssein's SUV was stolen.

The police analyzed the cellphone tower data from both Appellant's and Simmons's cellphones. The records showed that both men were near the location where the SUV was stolen on November 26, 2018, at the approximate time the van was stolen. On November 27, 2018, the date of the first shooting, both cellphones "pinged" from a tower less than a mile from the location of the shooting. Also, both cellphones "pinged" from a tower less than a mile from the scene of the second shooting on December 1, 2018. Lastly, on December 3, 2018, both cellphones "pinged" in the area of where the car chase occurred.

Both Appellant and Simmons were arrested. Following a non-jury trial, the court found Appellant guilty of the aforementioned charges. On December 2, 2022, the trial court imposed sentence. Appellant filed a timely appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

The first issue presented in Appellant's statement of matters complained of on appeal to the trial court was as follows:

> The evidence presented at trial was insufficient as a matter of law to sustain the verdicts of guilty:
>
> a. CP-51-CR-0003235-2019
>
>     i. Theft By Unlawful Taking (F3)
>
>     ii. Receiving Stolen Property (F3)
>
>     iii. UUA (M2)
>
> b. CP-51-CR-0003237-2019
>
>     i. Attempted Murder (F1)
>
>     ii. Conspiracy (F1)
>
>     iii. Aggravated Assault (F1)
>
>     iv. VUFA Section 6110.2(A) (F2)
>
>     v. PIC (M1)
>
>     vi. Simple Assault (M2)
>
>     vii. REAP (M2)
>
> c. CP-51-CR-0003239-2019
>
>     i. Conspiracy (F1)
>
>     ii. Aggravated Assault (F1)
>
>     iii. VUFA Section 6110.2(A) (F2)
>
>     iv. PIC (M1)
>
>     v. Simple Assault (M2)
>
>     vi. REAP (M2)
>
> d. CP-51-CR-0003241-2019
>
>     i. Conspiracy (F1)
>
>     ii. Aggravated Assault (F1)

          iii. VUFA Section 6110.2(A) (F2)

          iv. PIC (M1)

          v. Simple Assault (M2)

          vi. REAP (M2)

Statement of Matters Complained of on Appeal, 2/16/23, at ¶ 1.

The trial court reasoned that the lack of specificity in the 1925(b) statement resulted in waiver of Appellant's challenge to the sufficiency of the evidence:

> To preserve a sufficiency claim, an Appellant's Rule 1925(b) statement "must specify the element or elements upon which the evidence was insufficient so [the Superior Court] can then analyze the element or elements on appeal." **Commonwealth v. Roche**, 153 A.3d 1063, 1072 (Pa. Super. 2017). If the appellant fails to specify such elements, the sufficiency claim is deemed waived. **Commonwealth v. McFarland**, 278 A.3d 369, 381 (Pa. Super. 2022) citing **Roche**, 153 A.3d at 1072.
>
> Here, Appellant failed to provide any specificity in his 1925(b) statement. Appellant failed to provide the element or elements upon which he claims the evidence was insufficient. The Appellant listed the charges, but that is too vague to conduct a meaningful review.

Pa.R.A.P. 1925(a) Opinion, 3/15/23, at 7-8.

The second issue in Appellant's 1925(b) statement was a challenge to the weight of the evidence. Although Appellant did not raise a weight challenge at sentencing or file post-sentence motions, the trial court addressed the merits of this claim, concluding that Appellant was not entitled to relief.

Appellant raises two issues in this appeal. First, he challenges the sufficiency of the evidence underlying his convictions, using identical language from his 1925(b) statement. Appellant's Brief at 3-4 (Statement of Questions Presented). Second, Appellant seeks a new trial on the ground that the verdicts were against the weight of the evidence.[1] *Id.*

The standard we apply in reviewing the sufficiency of the evidence is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.... Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017).

As observed by the trial court, Appellant's statement of matters complained of on appeal failed to specify which element or elements of any offense the Commonwealth failed to prove. "In order to preserve a challenge

---

[1] Appellant listed a third issue in his Statement of Questions Presented: whether the trial court erred in denying his motions to dismiss under Pa.R.Crim.P. 600. In a footnote, however, Appellant conceded that he did not file Rule 600 motions prior to trial, thus making it impossible to raise this issue until the postconviction stage. Therefore, we will not address this issue in this direct appeal.

to the sufficiency of the evidence on appeal, an appellant's Rule 1925 statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013). "Where a 1925(b) statement "does not specify the allegedly unproven elements ... the sufficiency issue is waived [on appeal]." ***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008). Thus, Appellant has waived his sufficiency challenge.

In his second issue, Appellant challenges the weight of the evidence. Once again, Appellant has waived this argument.

A challenge to the weight of the evidence must be raised before the trial court either orally or in a written motion before sentencing, or in a post-sentence motion. ***See*** Pa.R.Crim.P. 607(A)(1)-(3). Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentence or in a post-sentence motion will result in waiver of the claim, even when the defendant raises a weight challenge in his Pa.R.A.P. 1925 statement of matters complained of on appeal and the court addresses the substance of the weight challenge in its opinion. ***Commonwealth v. Barkman***, 295 A.3d 721, 736 (Pa. Super. 2023); ***Commonwealth v. Thompson***, 93 A.3d 478, 491 (Pa. Super. 2014).

Here, Appellant did not file any written motions challenging the weight of the evidence, and he did not raise a weight challenge at sentencing. The first time that Appellant raised a weight challenge was in his Rule 1925 statement of matters complained of on appeal. Even though the trial court

reviewed the substance of the weight claim in its Rule 1925 opinion, our precedents make clear that this issue is waived. ***Barkman***, ***Thompson***, ***supra***.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  3/25/2024